BERNARD WHETSTONE *v.* ATLAS DRILLING AND PRODUCTION CO. ET AL

5-4001                                                409 S. W. 2d 322

Opinion delivered November 28, 1966
[Rehearing denied January 9, 1967.]

*William Powell Thompson,* for appellant.

*Harold L. Hall,* for appellee.

ED. F. MCFADDIN, Justice. The big question in this

case is whether a judgment was discharged or assigned. The decision on that question leads to two other questions to be discussed.

By its decree of February 3, 1966, the Chancery Court awarded appellant a judgment against R. Q. Couey for $3,000.00, but refused judgment against any of the other appellees herein; and also quashed an execution which appellant had obtained against some of the appellees. From said decree of February 3, 1966, there is this appeal. The appellant is Bernard Whetstone, Trustee, and Bernard Whetstone, Attorney. The appellees are: Atlas Drilling and Production Company, Jessie Wedgeworth, Lorene Wedgeworth, Bernard N. Nusko, R. Q. Couey, Charles Cammack, C. B. Carpenter, W. C. Dacus, Dave Hilliard, James W. Sedberry, Kay Matthews, Scott Medlin, and James M. Barker.

The facts, while largely undisputed, are quite complicated, and will be detailed chronologically:

1. By judgment entered March 30, 1965, the Chancery Court of Ouachita County awarded to Bernard Whetstone, Trustee, and Bernard Whetstone, Attorney (hereinafter called "Whetstone"), a joint and several judgment against Atlas Drilling and Production Company, Jessie Wedgeworth, Lorene Wedgeworth, Bernard N. Nusko, R. Q. Couey, Charles Cammack, and C. B. Carpenter, in the sum of $16,040.98, with interest and costs. These named persons against whom the said judgment was rendered are hereinafter referred to as "judgment debtors."

2. The judgment debtors gave notice of appeal and filed a supersedeas bond with the following named sureties, each being liable for the amount shown: W. C. Dacus for $3,000.00; Dave Hilliard for $3,000.00; Scott Medlin for $6,000.00; James W. Sedberry for $3,000.00; and Kay L. Matthews for $3,000.00.

3. Even though the intention was to prosecute an

appeal to the Supreme Court from the judgment of March 30, 1965, nevertheless no such appeal was ever perfected. Rather, on October 7, 1965, James Barker, an attorney of Hamburg, Arkansas, had a conference with Whetstone about two matters: one was in regard to obtaining an assignment of the said judgment; and the other was in regard to purchasing the so-called "Moon Lease."[1] Whetstone refused to discuss the Moon Lease with Barker in any way unless and until Barker would first pay for and take an assignment of the judgment.[2]

4. As a result of the said dealings, Whetstone, for $16,800.00, assigned to James M. Barker[3] the aforementioned judgment by proper assignment dated October 7, 1965, and duly recorded in Ouachita County on October 13, 1965. After the assignment of the judgment had been consummated and Barker had paid Whetstone $16,800.00 therefor, the parties then discussed the matter of Whetstone conveying to Barker for some consideration the so-called Moon Lease; and Whetstone and Barker consummated a deal whereby Whetstone deeded his interest in the Moon Lease to Barker for a consideration of $3,-000.00, which was to be paid from the first $3,000.00 that should be collected on the said judgment assigned to Barker by Whetstone. In other words, Barker assigned back to Whetstone the first $3,000.00 collected on the judgment. This assignment to Whetstone was duly recorded in Ouachita County on October 13, 1965.

5. The next step in the tangled affairs occurred in November 1965, when James M. Barker filed in the orig-

---

[1] In the deed which Whetstone made to Barker the description of the Moon Lease is as follows: "The so-called Moon Lease covering the North Half of the Northeast Quarter, Section 32, Township 15 South, Range 17 West" in Ouachita County.

[2] This is made clear by Barker's testimony: "Mr. Whetstone wouldn't talk to me about the 7/16ths interest until we had disposed of the judgment . . . he wouldn't even talk to me about the 7/16ths interest in the Moon Lease until we got the judgment out of the way. . ."

[3] The assignment to Barker contained no qualifying words such as "attorney" or "trustee" etc. It was simply to James M. Barker.

inal case of *Whetstone* v. *Atlas Drilling Company et al* a "Motion for summary judgment," in which Barker sought summary judgment against all of the original judgment debtors as named in Paragraph numbered 1, *supra*, and also against the sureties on the supersedeas bond as named in Paragraph numbered 2, *supra*. Barker alleged that he was the owner and holder of the judgment and that the failure of the parties to perfect the appeal gave Barker the right to judgment against the sureties for the amount for which each was liable. Whetstone intervened against the motion for summary judgment and asserted his rights to the first $3,000.00 collected against the judgment debtors and/or the sureties on the supersedeas bond. His intervention was because of the assignment that Barker had made to him of the said first $3,000.00 collected.

6. The Chancery Court entered judgment for Barker on his Motion for summary judgment on November 5, 1965, and for Whetstone on his intervention on December 13, 1965. On December 13, 1965, Whetstone had execution issued to Pulaski County for $3,000.00 against only these named parties, to-wit: C. B. Carpenter, Dave Hilliard, Scott Medlin, W. C. Dacus, James W. Sedberry, and Kay Matthews.

7. On January 21, 1966, the said Pulaski County parties as just named filed in the original case in the Ouachita Chancery Court a "Motion to quash execution," and later filed a "Motion to set aside judgment." The allegations in these two motions were: (a) that the assignment to Barker fully satisfied the judgment and Whetstone could not thereafter acquire any rights in a satisfied judgment; (b) that motion for summary judgment against the sureties was without the notice required by Ark. Stat. Ann. § 29-107 (Repl. 1962); and (c) that the execution to Pulaski County was void as not being in compliance with Ark. Stat. Ann. § 30-108 (Repl. 1962).

8. On February 3, 1966, the Chancery Court of

Ouachita County had a trial on the Motion to quash and the Motion to set aside judgment; and, after hearing the evidence offered, entered a decree dated February 11, 1966, finding and holding: (1) that the $16,800.00 paid Whetstone by Barker was a full, complete, and final satisfaction of the judgment, and that Whetstone could have no further rights therein; (2) that R. Q. Couey, individually, was indebted to Whetstone for $3,000.00 as consideration for the Whetstone deed to Barker of the Moon Lease, and judgment was rendered in favor of Whetstone and against Couey individually for said amount; and that the judgments of November 1965 and December 13, 1965 (as mentioned in Paragraph numbered 6, *supra*), were set aside.[4]

So much for the chronological recitations. From the decree of February 3, 1966, Whetstone prosecutes this appeal, urging three points, which we now list, but will discuss in our own topic headings:

"I.  The Court erred in holding that the assignment discharged the judgment.

"II.  No notice was necessary to enter judgment against sureties.

"III. The Court erred in overlooking the fact that regardless of any notice, and regardless of any prior proceedings, that all parties had notice and all parties were present at the time of the hearing on February 3, 1966, and that there was no reason in law or equity why the court could not grant equitable relief to all concerned at that time."

---

[4]The judgment of February 3, 1966, recites: "IT IS, THEREFORE, BY THE COURT, CONSIDERED, ORDERED AND DECREED, that the judgment entered on March 30, 1965, has been paid in full to the plaintiff, Bernard Whetstone, Trustee. All writs of execution issued subsequent to October 7, 1965, are quashed, and the judgments entered on November 5, 1965, and on December 13, 1965, are set aside. Bernard Whetstone, Trustee, is granted judgment against R. Q. Couey in the amount of $3,000.00, together with all costs of this action."

I. *Was The Judgment For* $16,040.98 *Fully Discharged By The Assignment From Whetstone To Barker?* This is the first and vital question to be decided; because if the assignment from Whetstone to Barker was a discharge of the judgment, then no further rights can flow therefrom. On this point the appellees claim that the assignment to Barker was in fact payment by Couey and/or Nusko; and that payment by one judgment debtor is a discharge of the judgment as to all judgment debtors. Cited in support of such claim is *Biggs* v. *Davis,* 184 Ark. 834, 43 S. W. 2d 724.

We find no merit in appellees' claim; and we hold that the judgment was assigned to Barker just as the assignment instrument stated. Certainly Whetstone did not intend or understand that the assignment to Barker was a discharge of the judgment, because Whetstone accepted back from Barker an assignment of the first $3,000.00 on the judgment. Barker intended to hold the assignment against the judgment debtors and the sureties, as is evidenced by his motion for summary judgment. He did not intend that the money paid Whetstone would be a discharge of the judgment.[5] In American

[5]Here is Barker's testimony:
"THE COURT: The Court would like to ask you a few questions. You bought the judgment from Mr. Whetstone. Did you ever recite what you paid for it?
"A. I paid him exactly what it recited, $16,800.00.
"Q. You then bought from him his right to Moon Lease?
"A. Correct.
"Q. And to pay for that, you assigned him the first Three Thousand Dollars collected under the judgment?
"A. Yes, sir, to be collected. I have the assignment here. It says: 'do hereby grant, bargain, sell, convey, set over and assign unto the said Bernard Whetstone, Trustee, and unto his heirs and assigns forever, all our rights of contribution or otherwise to the first $3,000.00 from Claude B. Carpenter and his bondsman or bondsmen in connection with that certain judgment dated February 10, 1965, in Case No. 10, 216 of the First Division of the Chancery Court of Ouachita County, Arkansas, styled "Bernard Whetstone, Trustee, etc., Plaintiff, v. Atlas Drilling and Production Company, Jessie Wedgeworth, Lorene Wedgeworth, B. N. Nusko, R. Q. Couey, Charles Cammack, and Claude B. Carpenter, Defendants, which judgment has heretofore this day been assigned to James M. Barker

Jurisprudence Vol. 30A, p. 866 *et seq.*, "Judgments" § 1009, there is a splendid discussion of the holdings in various jurisdictions as to when an assignment may be held to be a satisfaction of a judgment:

"In a considerable number of instances, one who pays a judgment takes an assignment thereof. By so doing, the general principles governing the effect of such payment are not materially modified. The effect of the assignment depends largely upon the same principles as those that govern the willingness of courts of equity to apply the doctrines of contribution and subrogation, namely, the existence of an equity and the intent of the parties. In the case of an assignment of a judgment, the mere making of the assignment discloses the intent that the payment should not operate as a discharge of the judgment."

Certainly in this case the real intent and effect of the entire transaction clearly demonstrates that the assignment to Barker was an assignment and not a satisfaction of the judgment. In a court of equity we pierce the fiction, and so we hold that there was no satisfaction of the judgment, and Whetstone's rights against the judgment debtors and the sureties on the supersedeas bond still exist to the extent of the $3,000.00 reassigned to him. Having thus answered the main question, we will consider the two other points which require decision.

by said Bernard Whetstone, Trustee, and his wife, in consideration of the payment of $16,800.00.' " That was October 7, 1965.

"Q. The question in the Court's mind is whether these were two separate transactions or divided transactions?

"A. It was two separate transactions. Mr. Whetstone wouldn't talk to me about the 7/16ths interest until we had disposed of the judgment. I believe I am right in that. That was all consummated at one sitting but he wouldn't even talk to me about the 7/16ths interest in the Moon Lease until we got the judgment out of the way and disposed of.

"Q. You paid for the Moon Lease by assigning him a $3,000.00 interest in the judgment you had just bought. $3,000.00 contribution rights or otherwise?

"A. Yes, sir. . . ."

II. *The Summary Judgment.* The only appellees who have filed a brief in this Court are C. B. Carpenter, one of the judgment debtors, and Kay Matthews, one of the sureties on the supersedeas bond; but, regardless of the absence of briefs, we consider the case on its merits as to all appellees because Rule 10 of our Court so provides.[6]

Matthews claims that the Court orders of November and December 13, 1965, awarding Barker and Whetstone judgments against the sureties on the supersedeas bond (as detailed in Paragraph numbered 6, *supra*) were and are void because no notice was given to Matthews of the intention to apply for such judgments. We find no merit in this contention. The sureties on a supersedeas bond become in legal effect parties to the suit. In *White* v. *Prigmore,* 29 Ark. 208, Chief Justice English said:

"To the argument of counsel, that the sureties have no day in court, it may be answered, that they have the same day in court that the appellant has, having, in legal effect, made themselves parties to the appeal, and agreed to abide and satisfy the judgment."

In *Rogers* v. *Brooks,* 31 Ark. 194, Chief Justice English said:

"The sureties, having made themselves parties to the suit by entering into the appeal bond, are not entitled to notice before decree against them."

To the same effect, see *Chavis* v. *Golden,* 226 Ark. 381, 290 S. W. 2d 637. So the summary judgment against the sureties was proper in this case.

III. *The Execution To Pulaski County.* By the

---

[6]This rule reads in part:

"When the appellee has failed to appear and file brief, when the case is called for submission the court may proceed to hear argument for the appellant and give judgment according to the requirements of the case."

judgment of December 13, 1965, Whetstone was awarded a separate judgment for $3,000.00 against Atlas Drilling and Production Company, Jessie Wedgeworth, Lorene Wedgeworth, Bernard N. Nusko, R. Q. Coucy, Charles Cammack, C. B. Carpenter, Dave Hilliard, Scott Medlin, W. C. Dacus, James W. Sedberry, and Kay Matthews, jointly and severally; and on the same day (December 13, 1965) Whetstone had execution issued to the Sheriff of Pulaski County against only these named parties: C. B. Carpenter, Dave Hilliard, Scott Medlin, W. C. Dacus, James W. Sedberry, and Kay Matthews.

In its judgment of February 3, 1966, the Court quashed this execution, and the question here presented is the correctness of the Court's quashing of the execution. That question is really rendered moot now because the execution of December 13, 1965, has, by lapse of time, become *functus officio*. See *Page* v. *Griffin*, 255 Ark. 1032, 287 S. W. 2d 453. Furthermore, the execution of December 13, 1965 should have been quashed because of the provisions of Ark. Stat. Ann. § 30-102 (Repl. 1962). That section provides: "No execution shall issue on any judgment or decree, unless ordered by the court, until after the expiration of ten days from the rendition thereof." The judgment in favor of Whetstone for the $3,000.00 was rendered on December 13, 1965, and there was nothing in the judgment that authorized an immediate execution; so the present execution of December 13th was premature by at least ten days.

Many other nice questions might suggest themselves as to executions, but these need not be discussed as they may not arise in view of our holdings on Points I and II herein.

### CONCLUSION

It follows that the decree of the Chancery Court of February 3, 1966, is reversed and the cause remanded to the Chancery Court with directions to set aside its decree of February 3, 1966, and reinstate its judgments of November and December 13, 1965, and authorize the

issuance of an execution by Whetstone on the said judgment for $3,000.00. All costs are taxed against appellees.